In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00188-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                                       JAMIE LEA WILSON, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 354th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 26057

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            The
State appeals[1]
the trial court’s ruling granting a motion to suppress filed by Jamie Lea
Wilson after her arrest for possession of methamphetamine in an amount of four
or more but less than 200 grams.  We
affirm the trial court’s ruling.  

I.          FACTUAL AND PROCEDURAL
HISTORY 

            Officer Stephen
Brownlow was contacted “regarding a tip involving drug activity.”  Over the telephone, an informant revealed
that “there would be a gold, Chevy Blazer expected eastbound on Highway 66
within 15 minutes of [when] we receive[d the] information, and there would be
two females in the vehicle and that they would be carrying about four ounces of
methamphetamine.” 

            Brownlow
located a gold Chevy Blazer and “followed it through town” for approximately
five minutes.  No traffic or other
violation was committed.  The vehicle
pulled into the driveway of a private residence behind a local church and
parked in front of another vehicle. 
Brownlow turned on the patrol car lights as the Blazer came to a
stop.  Jennifer Rossignol was driving the
Blazer while carrying passenger Wilson. 
Brownlow testified that “when I stopped the vehicle, the driver got out”
and “tried to walk over to the house.  I
told her to stop and come back to the vehicle.” 
Rossignol’s driver’s license was expired.  

            Brownlow
testified Wilson “was reaching down -- she turned away from the patrol -- from
us and our view, the front of her body was facing away, and she was digging
down in her pants like this like she was either stuffing, reaching, or
scratching something.  So immediately
suspicious.”  Fearing Wilson might have a
weapon, Brownlow instructed her to “get her hands out of her pants.”  When she turned around, Brownlow observed “a
cylindrical shaped object on the side of her leg.”  Prior to the commencement of a pat-down
search, Wilson voluntarily retrieved methamphetamine from her pants.  She was arrested for possession of
methamphetamine. 

II.        STANDARD OF REVIEW 

            We
review the trial court’s decision to grant Wilson’s motion to suppress evidence
by applying a bifurcated standard of review. 
Graves v. State, 307 S.W.3d 483,
489 (Tex. App.—Texarkana 2010, pet. ref’d);
Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet.
ref’d).  

            Because
the trial court is the exclusive trier of fact and judge of witness credibility
at a suppression hearing, we afford almost total deference to its determination
of facts supported by the record.  State
v. Ross, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
We also afford such deference to a trial court’s ruling on application
of law to fact questions, also known as mixed questions of law and fact, if the
resolution of those questions turns on an evaluation of credibility and
demeanor.  Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996).  

            While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on
questions not turning on credibility.  Carmouche, 10 S.W.3d at 332; Guzman, 955 S.W.2d at 89; Graves, 307 S.W.3d at 489.  Since all evidence is viewed in the light most
favorable to the trial court’s ruling, we are obligated to uphold the granting
of Wilson’s motion to suppress if it was supported by the record and was
correct under any theory of law applicable to the case.  Carmouche,
10 S.W.3d at 328; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

III.       ANALYSIS

            A.        Burden of Proof

            When
a defendant seeks to suppress evidence on the basis of an illegal search or
seizure, the burden of proof is placed initially upon the defendant.  Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant meets the initial burden of proof
by establishing that a search or seizure occurred without a warrant, shifting
the burden of proof to the State.  Id. 
If the State is unable to produce evidence of a warrant, it must prove
the reasonableness of the search or seizure. 
Id.  Here, the suppression hearing began with the
State stipulating this case involved a warrantless arrest.  This stipulation shifted the burden of proof
to the State.  See id. 

            B.        Brownlow’s Seizure of Wilson Was an
Investigative Detention 

            The
Texas Court of Criminal Appeals recognizes three categories of interactions
between police officers and citizens:  arrests,
investigative detentions, and encounters. 
State v. Perez, 85 S.W.3d 817,
819 (Tex. Crim. App. 2002).  Citing State
v. Priddy, the State argues that Brownlow’s interaction with Wilson was an
encounter which did not require probable cause or reasonable suspicion.  321 S.W.3d 82, 87 (Tex. App.—Fort Worth 2010,
pet. ref’d).  In Priddy, our sister court correctly stated that during encounters, “[l]aw
enforcement officers are permitted to approach individuals without probable
cause or reasonable suspicion” because although “[s]uch interactions may
involve inconvenience or embarrassment . . . they do not involve official
coercion.”  Id. (citing Florida v. Royer,
460 U.S. 491, 497–98 (1983); State v.
Garcia-Cantu, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); State v. Velasquez, 994 S.W.2d 676, 678
(Tex. Crim. App. 1999)). 

            The
lack of requirement for probable cause or reasonable suspicion is premised on
the theory that “[u]nlike an investigative detention or an arrest--each a
seizure for Fourth Amendment purposes--an encounter is a consensual
interaction, which the citizen may terminate at any time.”  Id.
at 86 (citing Gurrola v. State, 877
S.W.2d 300, 302–03 (Tex. Crim. App. 1994)). 
“So long as the citizen remains free to disregard the officer’s
questions and go about his or her business, the encounter is consensual and
merits no further constitutional analysis.” 
Id. (citing California v. Hodari D., 499 U.S. 621,
628 (1991); Johnson v. State, 912
S.W.2d 227, 235 (Tex. Crim. App. 1995)). 
The test also has been stated that “in order to determine whether a
particular encounter constitutes a seizure, a court must consider all the
circumstances surrounding the encounter to determine whether the police conduct
would have communicated to a reasonable person that the person was not free to
decline the officers’ requests or otherwise terminate the encounter.”  Florida
v. Bostick, 501 U.S. 429, 439 (1991).

            The
facts of this case do not indicate a consensual encounter.  Brownlow had been driving behind the Blazer
for approximately five minutes before he followed it into the driveway of a
private residence.  He turned on his
patrol car lights as the vehicle came to a stop.  When the driver of the vehicle exited the
Blazer and began walking toward the house, Brownlow “told her to stop and come
back to the vehicle.”  This command, by
the uniformed officer given after initiation of patrol car lights, would
communicate to reasonable persons that they were not free to decline the
officer’s requests or otherwise terminate the encounter.  Therefore, Brownlow’s seizure of Wilson
implicated Fourth Amendment protections. 


            C.        Reasonable Suspicion Was Required 

            The
Fourth Amendment prohibits “unreasonable searches and seizures.”  U.S.
Const. amend. IV.  This
prohibition extends to “brief investigatory stops such as the stop of [a]
vehicle.” United States v. Cortez,
449 U.S. 411, 417 (1981); see Corbin v.
State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).  

            Law
enforcement officers may stop and briefly detain persons suspected of criminal
activity on less information than is constitutionally required for probable
cause to arrest.  Terry v. Ohio, 392 U.S. 1, 22 (1968).  To initiate an investigative stop, the
officer must possess a reasonable suspicion based on specific, articulable
facts that in light of the officer’s experience and general knowledge, would
lead the officer to the reasonable conclusion that criminal activity is
underway and the detained person is connected to the activity.  Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  Such a stop must be objectively reasonable in
light of the particular circumstances of the case.  Maryland
v. Wilson, 519 U.S. 408, 411 (1997); Terry,
392 U.S. at 21–22; Corbin, 85 S.W.3d
at 276.  Reasonableness depends on “a
balance between the public interest and the individual’s right to personal
security free from arbitrary interference by law enforcement.”  Corbin,
85 S.W.3d at 276 (quoting Wilson, 519
U.S. at 411).  

D.        The
Investigative Detention Without Reasonable Suspicion Was Unreasonable

 

                        1.         The Anonymous Tip

            An
investigative stop need not be based on personal observation, but may be based
on an informant’s tip that bears sufficient “indicia of reliability” to justify
a stop.  See Adams v. Williams, 407 U.S. 143, 147 (1972).  The State argues Brownlow’s detention was
reasonable given the informant’s tip.  

            An
anonymous telephone call rarely will, standing alone, establish the requisite
level of reasonable suspicion because “an anonymous tip alone seldom
demonstrates the informant’s basis of knowledge or veracity.”  Gilmore
v. State, 323 S.W.3d 250, 258 (Tex. App.—Texarkana 2010, pet. ref’d)
(citing Alabama v. White, 496 U.S.
325, 329 (1990); Florida v. J.L., 529
U.S. 266, 270 (2000)).  

            After
a hearing, the trial court granted the motion to suppress the evidence found as
a result of the search.  The trial court
was in the best position to observe and determine the reasonableness and
credibility of the testimony.  When the
trial court makes no specific findings of historical fact, we presume it made
those findings necessary to support its ruling, provided they find support in
the record.  Carmouche, 10 S.W.3d at 327–28. 
The evidence appears to support the trial court’s implicit conclusion
that the informant’s information was, in the inception, classified as an anonymous
tip. 

            Brownlow
originally stated in his report that the informant was anonymous, but at the
suppression hearing, he testified that the informant was a confidential
informant whom Brownlow knew at the time he was contacted.  Later, Brownlow qualified that account and
stated that the informant was identified “[w]hen the report was done.”  When later questioned by the trial judge,
Brownlow stated that he did not know the informant, and the reliability of the
informant could only be established by corroboration of information.[2]  No attempt was made to present evidence that
the informant had given other reliable information in the past.  

                        2.         Corroboration of the
Tip

            To
provide reasonable suspicion for an investigative detention, an anonymous tip
must be “suitably corroborated or otherwise exhibiting sufficient indicia of
reliability.”  Gilmore, 323 S.W.3d at 258 (citing J.L., 529 U.S. at 270). 
Police can provide other indicia of reliability by independent
corroboration of the informant’s information. 
Id. (citing Illinois v. Gates, 462 U.S. 213, 236
(1983); Cassias v. State, 719 S.W.2d
585, 590 (Tex. Crim. App. 1986) (op. on reh’g)).  

            Brownlow
claimed he found Donahue’s tip reliable because “he was her boyfriend so I
guess he had intimate knowledge of [Wilson’s] activities.  He knew exactly what road she was on, knew
what time frame, . . . . He knew there’d be two females in the vehicle.  It was a gold Chevy Blazer, which are pretty
rare.”  In general, corroboration of mere
innocent details is insufficient to corroborate an anonymous tip.  Id.  Brownlow’s independent corroboration must
establish that the anonymous tip is “reliable in its assertion of illegality,
not just in its tendency to identify a determinate person.”  Id. (quoting
J.L., 529 U.S. at 271).  “[T]he corroboration of details that are
easily obtainable at the time the information is provided, and which do not
indicate criminal activity, will not lend support to the tip.”  Id. at
258–59.  The trial court could conclude
that the testimony recited above only established corroboration of innocent
details. 

            This
case is remarkably similar to the facts of Smith
v. State, 58 S.W.3d 784 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d).  In Smith,
police received a tip from Smith’s girlfriend[3] that
Smith would have heroin in his vehicle northbound on Highway 6 between 6:00 and
8:00 p.m.  She described the vehicle,
license number, and explained Smith would have two passengers.  Shortly after 6:00, Smith was in the vehicle
and place as described with two passengers; he was stopped and heroin was found.  Even though the informant had given
information in the past, it could not be verified that it was reliable.  The court thought it was relevant that the
informant had not explained the reason for turning in this information on her
boyfriend or whether she could have an ulterior motive.  Id. at 791.

            As
in this case, the State argued that the tip had been corroborated, but the
Fourteenth Court held that the corroboration was of easily obtainable details
and did not furnish a basis for reasonable suspicion.  Id.
at 792 (citing Garcia v. State, 3
S.W.3d 227, 235 (Tex. App.––Houston [14th Dist.] 1999, no pet.) (accurate
description of subject’s location and appearance is reliable in identifying
person accused, but does not show tipster has knowledge of concealed criminal
activity)).  We recited in Gilmore that an innocent detail may
corroborate an anonymous tip when the tip correctly predicts future movements
of the suspect if the travel involves unusual itineraries.  Gilmore,
323 S.W.3d 259.  When the travel
itinerary is more commonplace, knowledge of a suspect’s travel plans may not be
sufficient.  Id. (citing Smith, 58
S.W.3d at 793) (finding no reasonable suspicion for various reasons, including
that travel was down “well traveled corridor”). 
There is no testimony that the highway route taken by Rossignol and
Wilson was unusual. 

            However,
the State argues that the following transcript established corroboration of
travel plans:

            Q.        In the -- in the time that you were
going to go try to investigate Ms. Wilson traveling with narcotics, there
was further conversation between Mr. Donahue and Ms. Wilson in regard to
trying to get her to go and stop and get a hamburger and try to slow her down a
little bit; is that right?  

 

            A.        Correct. 


 

            Q.        And she actually did that; is that
right? 

 

            A.        Correct. 


 

            Q.        And she had food there, including a
hamburger, when you actually made the stop of the vehicle.  

 

            A.        Yeah. 
Ms. Rossignol was eating a Sonic burger. 
I told her to go back to the vehicle and she started eating a Sonic
burger.  

 

There is no indication that the
burger belonged to Wilson or that Rossignol and Wilson had in fact stopped at
Sonic after Donahue’s tip.  

            Moreover,
“[w]e look only at the facts known to the officer at the inception of the stop;
an initially unlawful stop is not validated by the discovery of criminal activity.  Tanner
v. State, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.) (citing Wong Sun v. United States, 371 U.S. 471,
484 (1963).  Because Brownlow did not
discover the existence of the burger until after initiation of the
investigative detention, this information could not be used to corroborate the
tip.  Similarly, we disregard evidence
cited by the State regarding Wilson’s mannerisms after the detention, as well
as Brownlow’s testimony that Donahue’s tip was corroborated because he knew
“the exact amount of drugs she was carrying.” 


            Viewing
the evidence in the light most favorable to the trial court’s ruling, we give
deference to the trial court’s fact-finding that the anonymous tip by Donahue
was not sufficiently corroborated prior to initiation of the investigative
detention.  

                        3.         Other Evidence of
Reasonable Suspicion 

            Brownlow
testified that the residence “had been abandoned – or unoccupied for some
time,” and was a “frequent[] target[] of burglary and theft.”  During cross-examination, Brownlow admitted
that he had no knowledge of whether the house was currently occupied, and we
have stated before that “[t]he fact that there had been [criminal] activity in
the area, but not known to have been committed by the defendant, is not
sufficient to corroborate an anonymous tip.” 
Johnson v. State, 146 S.W.3d
719, 722 (Tex. App.—Texarkana 2004, no pet.). 


            After
reviewing the record, we conclude deference is warranted to the trial court’s
determination that the State failed to meet its burden of proof to demonstrate
Brownlow had reasonable suspicion prior to initiation of the investigative
detention. 

IV.       CONCLUSION


            We
affirm the trial court’s judgment. 

 

 

                                                                        Jack  Carter 

                                                                        Justice

 

Date Submitted:          March 9, 2011

Date Decided:             March 18, 2011

 

Publish











[1]The
State’s appeal was made in accordance with our Code of Criminal Procedure,
authorizing us to exercise jurisdiction.  Tex.
Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2010).





[2]Brownlow
later divulged the informant’s identity as Wilson’s boyfriend, Jacob Donahue.  As set forth below, the record is unclear
whether the informant’s identity was known at the time of the telephone call,
or was deciphered at a later date:

 

                Q.            . . . you actually spoke with the informant, and his name
was Jacob Donahue; is that correct?

                A.            Correct. 

                Q.            Mr. Donahue is obviously identified or was identified at
the time; is that correct?

                A.            Yes. 

                Q.            And you thought he was credible; is that correct?

                A.            Yes. 

                Q.            Did he relay information to you concerning the fact that
his girlfriend, Jamie Lea Wilson, was engaged in drug activity?

                A.            Yes.

                . . . .

                Q.            The - and part of that also the - the informant, that you
originally listed as anonymous because you didn’t want to disclose the person -

                A.            Yes. 

                Q.            - for h[is] safety reasons -

                A.            Yes. 

                Q.            But, actually, it was just uniden [sic] - it was just
actually at the time was not disclosed. 

                A.            That’s correct. 

                Q.            Let me refer to that for the record.  He was disclosed and you knew who he was at
the time.  Right?

                A.            Yes.  When the
report was done. 

                Q.            It just stated he was anonymous and a supplement
clarified that; is that correct?

                A.            Correct. 

 

                This
testimony gave rise to the court’s questioning of Brownlow in which he stated
he did not know Donahue.  Based on this
record, the trial court could have found Donahue was anonymous at the time of
the call, except for his identification as Wilson’s boyfriend.  In any event, the State does not argue that
Donahue was a named informant, but argues the information from the informant
was corroborated by Wilson’s suspicious behavior. 





[3]The
girlfriend had previously given the police “information.”