

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-10-00438-CR**

KORY NELSON TURNER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Kory Nelson Turner appeals his conviction and twelve-year sentence for murder. He brings nine points: (1) the trial court violated his right to a public trial by excluding his family members from voir dire; (2–3) the trial court erred by refusing to allow testimony regarding prior acts of violence by the victim and the victim's character for violence; (4) the trial court erred by refusing to strike testimony regarding the victim's never having been violent in the past; (5–7) the trial court erred by refusing to allow appellant to present evidence of his peaceful

character under rule 404 and to rebut the State's evidence of his aggressive behavior, thereby preventing appellant from presenting a complete defense under the Sixth and Fourteenth Amendments; (8) the trial court erred by refusing to allow appellant to present evidence that a key State's witness was subject to having been influenced by his arrest for family violence; and (9) the trial court erred by refusing appellant's timely requested jury instruction on criminally negligent homicide. We reverse and remand.

## Background

David (Dave) Castello, a friend of appellant's, invited another friend of his, Leonard E. "Lenny" Keith, Jr., to a party at appellant's house. Appellant, Dave, and Keith were all drinking at the party. Early the next morning, after at least one confrontation with Keith about appellant's wife, appellant shot and killed him. A jury convicted appellant of murder.

## Right to Public Trial

Appellant contends in his first point that the trial court violated his right to a public trial by refusing to allow some of the prospective jurors to sit in the jury box during voir dire to make room for appellant's family in the gallery. The State contends that appellant failed to preserve his appellate argument for review.

**Preservation of Error**

The following exchange occurred at trial:

THE COURT: All right. Outside the presence of the jury, it is my understanding that the Defense wishes to have family members present during the jury selection; is that correct?

2

MR. MOORE: Judge, his wife and his brother are here, and I've asked them to be here today *for the express purpose to see if anybody on the panel knows them*. I think his father-in-law is also here. I don't -- in making an inquiry of the Court, it appears that the entire courtroom seating area is going to be full, so I have requested that the Court seat some of the potential jurors in the jury box so that I can have room to get at least those three people in the room.

THE COURT: Well, I'm going to deny that request, but I will allow you to have them come in if you would -- for the purpose of introductions.

MR. MOORE: We'll do it that way, Judge.

THE COURT: I've got no problem with that.

MR. MOORE: *I object to the Court's not making arrangements allowing them to be present for the voir dire examination*.

THE COURT: Well, unfortunately, we are bringing in chairs to accommodate the large panel, and so I'm going to overrule your request.

MR. MOORE: Note my exception.

THE COURT: I understand. [Emphasis added.]

The Sixth Amendment guarantees to the accused in all criminal prosecutions the right to a "public trial"; this fundamental right was extended to defendants in state criminal prosecutions through the Fourteenth Amendment. *See Herring v. New York*, 422 U.S. 853, 856–57, 95 S. Ct. 2550, 2552–53 (1975); *In re Oliver*, 333 U.S. 257, 273, 68 S. Ct. 499, 507 (1948). Although the violation of the right to a public trial is structural error—that is, error that does not require an appellant to prove specific prejudice to obtain a new trial, *Steadman v. State*, 360 S.W.3d 499, 510 & nn.40–41 (Tex. Crim. App. 2012)—a complaint

3

that the right to a public trial was violated is nevertheless subject to procedural error preservation rules, *Levine v. United States*, 362 U.S. 610, 618–19, 80 S. Ct. 1038, 1043–44 (1960); *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006), *certs. denied*, 549 U.S. 1360, 550 U.S. 969 (2007); *Brandley v. State*, 691 S.W.2d 699, 707 (Tex. Crim. App. 1985); *see also Lilly v. State*, 365 S.W.3d 321, 327–28 (Tex. Crim. App. 2012) (refusing to address appellant's right to public trial claims under the Texas constitution and code of criminal procedure because appellant failed to brief those arguments and authorities separately).

To preserve error for appeal, a party must have "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). The court of criminal appeals has held that

> [a]s regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error. *Ford v.*

4

*State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). In making this determination, an appellate court should consider the context in which the complaint was made and the parties' understanding of the complaint at the time. *Id.*

Appellant clearly objected to the exclusion of members of the public, his family, from the trial court proceedings. Although he did not give the trial court any constitutional authority for his objection to the exclusion of those family members, he made his desire for their inclusion clear even though he agreed to a less desirable alternative, i.e., their being introduced to the jury, over his objection. This case is similar to *Clarke v. State*, in which the court of criminal appeals held that the appellant's argument in his motion for new trial—that the prosecutor had deliberately allowed false material to be included in the presentence investigation report (PSI)—was the same substantively as his argument on appeal; the appellant "added more whistles and bells on appeal, but the tune was the same." 270 S.W.3d 573, 580–81 (Tex. Crim. App. 2008).

In *Clarke*, the appellant entered an open plea of guilty to sexually assaulting his fourteen-year-old step-cousin. *Id.* at 575. At the punishment hearing, the State proffered, and the trial court admitted, a PSI, in which Clarke's aunt said that "she had an intuition that perhaps the [appellant's] sister had a similar experience with her brother, but was afraid to relate the experience to anyone." *Id.* At the beginning of the hearing, when the trial judge asked if anyone had a problem with the PSI, Clarke's counsel said that Clarke had no

5

problems with the PSI "except for the 'conjecture on behalf of the victim's mother.'" *Id.*

Clarke filed a motion for new trial, asserting that the PSI "contained totally unfounded allegations from the Complainant's mother . . . that [Clarke] had molested his own sister." *Id.* at 576. He argued at the motion for new trial hearing that "based on the affidavit by the complainant's mother, the prosecutor was aware that the implication in the PSI was false and that she '[t]ook no steps to alert the Court or defense counsel that this exculpatory evidence—that there was exculpatory evidence, namely the falsity of this extraneous offense.'" *Id.* at 577. On appeal, Clarke raised the following issue: "The prosecutor deliberately deceived the trial court during the punishment phase by allowing evidence concerning an alleged extraneous offense known by the prosecutor to be false, to remain in the presentence report, in violation of the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the Texas Constitution." *Id.* at 578. The Fourteenth District court of appeals, with Justice Mirabal dissenting, held that Clarke did not preserve this argument for appeal because

> (1) he did not timely make a prosecutorial misconduct claim in his written motion for new trial or in any amendment to that motion, and (2) even if he had raised a prosecutorial misconduct claim at the hearing itself, he still waived any constitutional claim on appeal because he did not present any constitutional argument to the trial court at the hearing.

*Id.* (footnotes omitted).

6

The court of criminal appeals reversed, holding that Clarke had preserved his complaint, even though it was not set forth in his written motion for new trial, because he "argued at the new-trial hearing that the prosecutor was aware that the implication in the PSI was false and that the prosecutor had a duty to inform defense counsel and the trial court that the allegation was false." Therefore, his complaint at trial and on appeal were "essentially the same" even though he did not cite the Fourteenth Amendment; Article I, section 19 of the Texas constitution; *Brady*; *Giglio*; or the *Mooney-Pyle-Napue* line of cases until appeal.[1] *Id.* at 579–80.

Although here appellant gave the judge a specific reason—that he wanted to see if anyone on the venire panel knew the family members—he also specifically objected to their exclusion from the proceedings. Because the substance of appellant's objection at trial and his argument on appeal are "essentially the same," we conclude and hold that appellant preserved his argument for appeal. *Id.* at 580, 583 ("He has gussied [his complaint] up with legal authority, but the underlying claim is precisely the same one."); *see also Presley v. Georgia*, 130 S. Ct. 721, 722 (2010) (reviewing merits when counsel

---

[1]U.S. Const. amend. XIV; Tex. Const. art. I, § 19; *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972); *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173 (1959); *Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177 (1942); *Mooney v. Holohan*, 294 U.S. 103, 55 S. Ct. 340 (1935).

objected to the exclusion of the public from the courtroom during voir dire, in reference to the appellant's uncle).

**Applicable Law**

Upon objection to the closure of a proceeding, the party seeking to close it must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. *Waller v. Georgia*, 467 U.S. 39, 48, 104 S. Ct. 2210, 2216 (1984); *Steadman*, 360 S.W.3d at 504. The exclusion of even a single person from court proceedings can violate a person's Sixth Amendment right to a public trial. *See Presley*, 130 S. Ct. at 722. Additionally, the right extends to voir dire proceedings. *Id.* at 724.

A trial court's findings regarding closure must be specific; findings that are too broad and general will not support closure. *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216; *Steadman*, 360 S.W.3d at 504. The United States Supreme Court has admonished that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 130 S. Ct. at 725. "[C]ircumstances justifying closure 'will be rare . . . and the balance of interests must be struck with special care.'" *Steadman*, 360 S.W.3d at 505 (quoting *Presley*, 130 S. Ct. at 724).

Here, the trial court's stated reason for excluding appellant's family members from the voir dire was that the courtroom was already crowded due to

8

the large venire panel that had been called in the case. In *Presley*, the trial court gave the same reason, but it also added at the motion for new trial hearing that it was not comfortable seating family members in the same area as prospective jurors. 130 S. Ct. at 722. The Court concluded that

> [t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials. Nothing in the record shows that the trial court could not have accommodated the public at Presley's trial. Without knowing the precise circumstances, some possibilities include reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members.

*Id.* at 725. Accordingly, the Court held that the trial court had not made findings specific enough to warrant excluding the appellant's uncle from voir dire. *Id.*

Here, nothing in the record shows that the trial court's ruling met the requirements of *Waller*: the trial court did not state an overriding interest other than space concerns,[2] did not consider reasonable alternatives that might have accommodated appellant's family members, and did not make adequate findings to support its decision to exclude appellant's family members. *See Presley*, 130

---

[2]It appears that the trial court was asked to accommodate only three additional people in the courtroom. Given that the state and local governments have an obligation to provide adequate facilities to the judicial branch so that it may properly carry out its constitutionally-created functions, the trial court could have properly exercised its inherent authority to seek out an alternative location or arrangement of space that would have accommodated the presence of only three additional persons in the courtroom. *See, e.g.*, Tex. Const. art. II, § 1, art. V, §§ 7, 8; *Vondy v. Commissioners Court of Uvalde Cnty.*, 620 S.W.2d 104, 110 (Tex. 1981) ("The legislative branch of this state has the duty to provide the judiciary with the funds necessary for the judicial branch to function adequately.").

S. Ct. at 725; *Waller*, 467 U.S. at 48–49, 104 S. Ct. at 2216–17; *Steadman*, 360 S.W.3d at 506–10.  Thus, we sustain appellant's first point and hold that he is entitled to a new trial.[3]  *See Steadman*, 360 S.W.3d at 510.

## Evidentiary Rulings

Although appellant is entitled to a new trial on his first point, we nevertheless address appellant's remaining points, as they involve matters that will likely reoccur in a new trial.  *See Davis v. State*, 144 S.W.3d 192, 201 (Tex. App.—Fort Worth 2004, pet. ref'd) (op. on reh'g).

### Evidence of the Victim's Character, Propensity, and Past Violent Acts

In his second and third points, appellant contends that the trial court erred by excluding Patience Castillo's testimony regarding prior acts of violence against her by the victim, Keith, and testimony of her opinion of Keith's character for becoming aggressive and violent when he was drinking.  In his fourth point,

---

[3]We ordinarily abate when a trial court's findings are insufficient; however, higher courts have held that when a trial court's findings on trial closure are insufficient, the remedy is a new trial.  *See Presley*, 130 S. Ct. at 725; *Lilly*, 365 S.W.3d at 329, 333 ("Generic findings will necessarily invalidate a closure . . . .");  *see also* Tex. R. App. P. 44.4 (providing that court of appeals must direct trial court to correct any error that prohibits the proper presentation of a case in the court of appeals).  In *Steadman*, the State filed a presubmission motion to abate for more detailed findings, which the court of appeals granted.  360 S.W.3d at 501.  Despite the trial court's detailed additional findings—which included that the space was narrow, the trial was emotionally charged, and having family members of the defendant so close to the panel would make the panel members uncomfortable and heighten security concerns—the court of criminal appeals held that they were insufficient to justify excluding the family members from the courtroom.  *Id.* at 501–02, 510–11.  Accordingly, we do not believe that abatement is the proper remedy here.  *See, e.g., Lilly*, 365 S.W.3d at 329, 333.

appellant complains about the trial court's admission of—and refusal to strike—Dave's testimony that he had never known Keith to be violent in the past. According to appellant, Castillo's testimony was admissible under rule 404(a)(2) as opinion evidence and also as evidence of specific acts to rebut Dave's testimony. Tex. R. Evid. 404(a)(2).

Appellant proffered Castillo's testimony outside the jury's presence; she testified on voir dire that when she was seventeen or eighteen years old, she moved in with Keith for a couple of months. She did not know how old Keith was at the time other than that he was older than twenty-one. At first, Keith was good to her, but he started drinking more and became "real easy to pick fights with." She saw him engage in a lot of fights. Eventually, she decided to terminate the relationship. When she tried to leave, Keith grabbed her arm hard enough to leave a bruise, and he pushed her down on the couch. After she left, Keith kept calling her, driving by her job, and trying to contact her. He made "ugly" phone calls to her parents' home to which she had returned. Castillo eventually had to call the police about Keith's behavior. Although Castillo did not hear anything else from Keith after she made the police report, Keith was charged with and pled guilty to harassment. These events occurred in 1996. Appellant's trial took place in September 2010.

The State objected on "relevance and under 403." The State's main argument was that the events testified to by Castillo had occurred over fourteen years before the trial, and twelve years before the shooting, when Keith was in

11

his mid to late twenties. The trial court sustained the State's objection after stating the following:

> Well, the problem I'm having is I have a three-month period of a relationship between your proposed witness and the deceased. But then there's 12 years that passes with nothing that we can offer or be substantiated as to whether or not this continued. And then we have a situation to where he shows up and there's -- nobody knows anything about him at the party. That's what I'm wrestling on.

When asked to reconsider his ruling, the trial judge declined, indicating that his ruling was based on rule 403.

During the State's case-in-chief, on direct, Dave had testified that he knew Keith from being involved in Cub Scouts with their sons. Because Dave's son was sixteen at the time of trial, he estimated that he had known Keith for the past seven to eight years before the trial. Dave testified that Keith had never met appellant or his wife, Amy, before the night of the shooting.

The defense recalled Dave during its case-in-chief. After asking him about discrepancies between his testimony at trial and his statement to police after the shooting, consisting mainly of Dave's failure to initially tell the police that Amy had been willingly and openly kissing Keith that night, appellant's counsel asked Dave,

> Q. You also indicated on that oral statement that you gave to the police that you'd never seen [appellant] be violent before?
>
> A. Correct.
>
> Q. In all the time that you've known him?
>
> A. Correct.

12

The State then asked Dave on cross, "[Keith] either, you'd never seen him be violent either?," and Dave answered, "No, sir." Appellant did not object. Accordingly, we must overrule appellant's fourth point complaining about the admission of, and the trial court's failure to strike, this evidence of Keith's character. *See* Tex. R. App. P. 33.1(a)(1); *Lown v. State*, 172 S.W.3d 753, 758 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Appellant nevertheless contends that he should have been allowed to rebut Dave's testimony that he had never known Keith to be violent with Castillo's testimony that when she knew him, Keith was easy to pick fights with when he had been drinking. Appellant argues that the evidence is admissible under rule 404(a)(2). Tex. R. Evid. 404(a)(2). Under rule 404(a)(2), a defendant may offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor, but he may do so only through reputation and opinion testimony under Rule 405(a). Tex. R. Evid. 404(a)(2), 405(a); *Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2010). Evidence of specific bad acts is admissible, however, to impeach a character witness's testimony that the victim was peaceful. *Miller*, 330 S.W.3d at 620–21. Here, the trial court ruled that regardless of the admissibility of Castillo's testimony under any relevance

13

rules, the evidence was nevertheless inadmissible under rule 403.[4]  Tex. R. Evid. 403.

A rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.  *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.).  The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997).

Because of the remoteness of Keith's acts and subsequent conviction to which Castillo testified, her testimony had less probative value to rebut Dave's testimony about his more recent observation of Keith's character.  For purposes

---

[4]The State contends that appellant failed to challenge the trial court's 403 ruling on appeal; however, the argument is fairly included as a subsidiary issue in appellant's second through fourth points.  *See* Tex. R. App. P. 38.1(f); *Davis v. State*, 268 S.W.3d 683, 695 n.1 (Tex. App.—Fort Worth 2008, pet. ref'd).

of impeachment of a character witness's testimony about the peaceful nature of a victim, an act, conviction, or event "must have occurred at a time sufficiently recent to have some bearing on the present credibility of the witness." *Miller*, 330 S.W.3d at 620–21 & n.26 (quoting *Sinegal v. State*, 789 S.W.2d 383, 387 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd)). This is because there is "a presumption that one is capable of rehabilitation and that his character has reformed over a period of law abiding conduct." *Morris v. State*, 67 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *cf.* Tex. R. Evid. 609(b) (providing that conviction greater than ten years old generally may not be used to impeach witness). Thus, the trial court did not abuse its discretion by excluding Castillo's testimony under rule 403. *See Miller*, 330 S.W.3d at 620–21 & n.26 (noting that questioning the character witness with "Did you know" or "Have you heard" questions would not be proper under rule 403 because of remoteness of victim's conviction and citing rule 403 cases on remoteness); *Moore v. State*, 143 S.W.3d 305, 314–15 (Tex. App.—Waco 2004, pet. ref'd) (op. on reh'g). We overrule appellant's second and third points.

**Exclusion of Opinion Testimony On Appellant's Character for Peacefulness**

In his fifth through seventh points, appellant contends that the trial court abused its discretion by refusing to allow him to present evidence of his peaceful character.

During the State's direct examination of Jennifer Mathews, she testified that she saw Keith push appellant that night, and she told her husband that she

15

did not believe appellant would start a fight with Keith. On cross-examination, appellant's counsel asked Mathews if she had ever known appellant to be a violent person, and she said she did not know him "in that manner" but that she had never seen him be physically violent. She also said that his bark was worse than his bite. On redirect, the State asked about her opinion of his character, and she said, appellant "is probably more verbally harsh than I would be able to tolerate." She also testified that he got angry quickly and agreed that he tended to "run his mouth" a lot. Appellant then sought to admit testimony from a good friend that he had never known appellant to be violent or aggressive. The State objected on relevance grounds, and the trial court sustained the objection.[5]

Generally, character evidence is not admissible to show that a person acted in conformity with a character trait on a particular occasion. Tex. R. Evid. 404(a); *Melgar v. State*, 236 S.W.3d 302, 306 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). But an accused in a criminal case is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense when that character trait is relevant to the offense. Tex. R. Evid. 404(a)(1)(A); *Melgar*, 236 S.W.3d at 306–07. A pertinent trait is "one that relates to a trait involved in the offense charged or a defense

---

[5]The State contends that appellant failed to preserve this argument for appeal by failing to give the trial court a reason he wanted the evidence admitted in response to the State's objection. But the witness's statement, and the trial court's ruling on the State's objection, were sufficient to preserve the point for review. *See* Tex. R. App. P. 33.1(c); *Edwards v. State*, 178 S.W.3d 139, 146 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

16

raised." *Melgar*, 236 S.W.3d at 307. Thus, in a prosecution for a crime of violence, the defendant's character for being peaceful is pertinent because evidence of peaceful character makes it less likely that the defendant committed the crime. *Id.* In a murder case, the accused's reputation for peacefulness, or nonaggressive behavior, is the appropriate inquiry. *Wheeler v. State*, 67 S.W.3d 879, 882 n.2 (Tex. Crim. App. 2002); *Melgar*, 236 S.W.3d at 307. This type of evidence can be elicited via opinion or reputation testimony, or both. Tex. R. Evid. 405(a); *Melgar*, 236 S.W.3d at 308.

Here, appellant was accused of murder, and he sought to introduce evidence of his nonviolent character through a friend who had known him for almost thirty years. Because appellant was entitled to elicit such testimony, the trial court abused its discretion by excluding it.[6] *See* Tex. R. Evid. 404(a)(1), 405(a); *Melgar*, 236 S.W.3d at 308. Because we must reverse and remand the case because of our disposition of appellant's first point, we need not perform a harm analysis.[7] *See* Tex. R. App. P. 47.1. We sustain appellant's fifth point.[8]

---

[6]The State contends that appellant's questions asked for answers that would necessarily include specific instances of conduct; however, the "[h]ave you known" questions were broad and could therefore have encompassed the witness's opinion and knowledge of appellant's reputation, both of which are admissible under rule 405(a). Tex. R. Evid. 405(a); *see Johnson v. State*, Nos. 05-93-01960-CR, 05-93-01961-CR, 1997 WL 428047, at *4 (Tex. App.—Dallas July 31, 1997, no pet.) (not designated for publication).

[7]Because we need not consider harm, it is irrelevant that appellant was able to elicit from Dave that Dave had never known him to be violent. *See Valle v. State,* 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the

17

**Exclusion of Testimony Suggesting Dave Castello Subject to Influence**

In his eighth point, appellant claims that the trial court abused its discretion by refusing to allow him to introduce evidence that Dave was subject to having been influenced in his testimony by his arrest for family violence.

Dave had admitted, and the jury heard, that he had not originally told the police after the shooting about seeing Keith and Amy openly kissing at the party. But he said that he did not do so then because he did not want to "put [his] friends' dirty laundry out there." He told appellant's counsel that he had met with the prior prosecutor on the case about a year before trial but he did not know the specific date. Appellant's counsel then asked, "That's when you got arrested for a felony offense, family violence and having previously been convicted of family violence?" The State asked to approach the bench; after a brief conference, the trial court allowed appellant and the State to question Dave on voir dire.

Appellant's counsel asked Dave on voir dire whether he had "decided that [he] needed to tell the police about all of this stuff" that he had seen between Keith and Amy around the same time he was arrested for family violence. Dave answered, "That's the first time I was contacted by any of the police. I kept waiting for -- why it was taking so long." He also said his talking to the prior

admission of evidence is cured where the same evidence comes in elsewhere without objection.").

[8]Moreover, because the evidence was admissible under evidentiary rules, we need not address appellant's sixth and seventh points, arguing that it was admissible for other reasons. *See* Tex. R. App. P. 47.1.

18

prosecutor was not related to the arrest. The prosecutor at trial asked Dave whether the State had offered him any kind of deal in exchange for his testimony; he said no and that his arrest had nothing to do with appellant's case. He also said that his family violence case was dismissed. The State objected to the admission of the testimony under rules 608 and 609.

The following exchange occurred:

THE COURT: Well, I don't know what [appellant's counsel] may know, but the jury has heard that he has been arrested. We can do it one of two ways. We can come back in and I can give them an instruction to disregard, or we can do exactly the same thing we just did in the presence of the jury, because either way, I mean, it's going to establish one way or the other that --

[THE STATE]: That he got arrested.

THE COURT: He got arrested, so it's whichever way y'all want to do.

The problem I'm trying to negotiate with this is the one person that the State may want to -- need to rebut this is laying in a hospital bed right now dying.

[THE STATE]: And that would be [the prior prosecutor assigned to the case and to whom Dave had originally talked].

THE COURT: Exactly. And I'm a little concerned about putting the State in a position now of not being able to rebut that. Is there any indication as to who the prosecutor was that dismissed the case?

[APPELLANT'S COUNSEL]: It's -- I object. It's what's in his mind, it's not what's in the prosecutor's mind or anybody else's mind. It's whether or not he feels some need to tailor his testimony in a particular way.

THE COURT: Well, if that's the case, he's already said, I got no benefit out of it.

[APPELLANT'S COUNSEL]: And they're entitled to ask him those questions in the presence of the jury about it if they want to do it.

19

[THE STATE]: That case was no billed by the grand jury, Judge.

. . . .

THE COURT: . . .

    The jury has already heard that he was arrested on August -- sometime in August of 2009. I'm not going to let you go any further.

. . . .

[THE STATE]: We'd ask the Court to instruct the jury to disregard the last question and answer.

THE COURT: Denied.

Appellant contends that Dave's testimony should have been admitted before the jury because it shows a motive for testifying in such a way that would "curry favor" with the State. According to appellant, the charges against Dave provide a "logical impetus" for his suddenly remembering in his discussions with the prior prosecutor that he had seen Keith and Amy kissing that night when he did not initially give those facts to the police.

The possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him. *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009). "Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about,

20

among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant.'" *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 904 (2011) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986)). Thus, unless the inquiry is addressing an issue that relates to the charged offense or the credibility of the witness, "allowing a party to delve into the issue beyond the limits of cross[-]examination wastes time and confuses the issues." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009); *Walker v. State*, 300 S.W.3d 836, 845 (Tex. App.—Fort Worth 2009, pet. ref'd). A trial court has the discretion to limit testimony that may confuse the issues or be only marginally relevant. *Walker*, 300 S.W.3d at 845. Accordingly, a trial court abuses its discretion when it denies a defendant the opportunity "to show a prototypical form of bias on the part of the witness" through cross-examination. *Id.* at 845 (quoting *Felan v. State*, 44 S.W.3d 249, 254 (Tex. App.—Fort Worth 2001, pet. ref'd)).

To cross-examine a witness about pending charges or a similar "vulnerable relationship" with the State, a proponent must show a logical relationship between the charges and the witness's potential bias or prejudice. *Irby*, 327 S.W.3d at 147–49.

Here, appellant was attempting to show that Dave had a motive to testify favorably for the State, either because he was attempting to ingratiate himself with the prior prosecutor assigned to the case, who had interviewed Dave around

21

the time he was arrested for family violence (and was then unable to later change his story), or because he did so in exchange for the dismissal of his charges. Dave testified on voir dire that the prosecutors on the two cases were not the same; he also testified that he did not have a deal with the State to give favorable testimony. During the discussion outside the jury's presence, the prosecutor informed the judge that the case had been no-billed by the grand jury; thus, it seems unlikely that Dave would have testified untruthfully in favor of the State for that reason. Moreover, the jury had already heard appellant's counsel question whether Dave had first come forward with the detail of Keith and Amy kissing around the same time as his family violence arrest, and the trial court denied the State's request for an instruction to disregard. Thus, we conclude and hold that appellant failed to show the required logical relationship between the family violence charge and his testimony and that the trial court did not abuse its discretion by refusing to allow appellant to further question Dave about the connection between his arrest and subsequent testimony in this case. *See id.*; *Gilmore v. State*, 323 S.W.3d 250, 265–66 (Tex. App.—Texarkana 2010, pet. ref'd). We overrule appellant's eighth point.

**Failure to Charge on Criminally Negligent Homicide**

In his ninth point, appellant contends that the trial court erred by failing to include an instruction on criminally negligent homicide in the jury charge. While discussing the jury charge at trial, appellant's counsel stated, "I think the conduct in the case of [appellant] testifying that he pointed a loaded firearm in the

22

direction of the victim . . . raises that issue, and so we request criminally negligent homicide." The trial court denied the request.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Criminally negligent homicide is a lesser-included offense of murder. *Thomas v. State*, 699 S.W.2d 845, 847 (Tex. Crim. App. 1985); *Torres v. State*, 343 S.W.3d 297, 305 (Tex. App.—Eastland 2011, pet. ref'd). Here, appellant testified that the gun discharged accidentally. Accidental discharge alone,

23

however, does not raise the issue of criminally negligent homicide. *Thomas*, 699 S.W.2d at 850; *Torres*, 343 S.W.3d at 305. Thus, we must examine the facts and circumstances to determine if appellant was unaware of the risk created by his conduct. *Thomas*, 699 S.W.2d at 850; *Torres*, 343 S.W.3d at 305.

Appellant testified that he was in the garage with Amy when he saw Keith "coming at" him. Keith was two to four feet away from them, and he scared appellant. Appellant said as soon as he saw Keith out of the corner of his eye, he flinched and the gun went off. He testified that he did not intend to shoot at or even point the gun at Keith, but he must have pointed it at Keith because when the gun went off, Keith was hit. On cross-examination, appellant testified that everything happened so quickly, that when he first saw Keith he was close to him, and that he just reacted when he saw Keith out of the corner of his eye. According to appellant, Keith must have seen Amy because he was walking toward her. Appellant had shot the nine-millimeter gun in the past and said the trigger pull was not heavy to him because "[i]t's the only thing I've ever known." Appellant did admit, however, that he intentionally brought the gun outside.

The State points to evidence that appellant had owned the gun for twenty years, that he owned three guns and kept trigger locks on all of them, that he kept one round in the chamber of the gun he used that night for home protection, and that when he took out the gun that night, he had to retrieve the trigger key from the nightstand and unlock the trigger lock, as evidence that appellant was aware of the risk of injury or death that could occur as a result of his conduct.

24

The evidence shows that appellant knew the gun was loaded, bypassed the safety constraints he usually used in storing the gun, and was familiar with the gun's operation. Thus, the evidence does not raise a question as to whether appellant was unaware of the risk created by his conduct in carrying a loaded, unlocked firearm outside of his house while under the influence of alcohol and after a heated, physical altercation with a man who had made physical advances toward his wife; the evidence does not therefore show that if appellant was guilty, he was guilty only of criminally negligent homicide. Accordingly, we conclude and hold that the trial court did not err by denying appellant's timely requested instruction. *See Thomas*, 699 S.W.2d at 852; *Torres*, 343 S.W.3d at 305–06. We overrule appellant's ninth point.

## Conclusion

Having sustained appellant's first and dispositive point, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

PUBLISH

DELIVERED:  August 9, 2012

25