

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00470-CR
### NO. 02-13-00471-CR

JOSE LUIS ACOSTA                                        APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NOS. 1304126R, 1304127R

----------

## MEMORANDUM OPINION[1]

----------

A jury found Jose Luis Acosta, Appellant, guilty of attempted capital murder and murder. In three issues, Appellant contends (1) the trial court erred in admitting photographs showing the deceased's wounds and other injuries, (2) the trial court erred by admitting testimony of some of Appellant's recorded

---

[1]*See* Tex. R. App. P. 47.4.

telephone conversations from jail, and (3) the trial court erred by denying his requested jury instructions on lesser-included offenses and accident. We affirm.

## Background

In trial court cause number 1304126R (appellate court cause number 02-13-00470-CR), a jury convicted Appellant of the attempted capital murder of Eduardo Bustos and Savana Rodriguez. *See* Tex. Penal Code Ann. § 15.01(a) (West 2011) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."), § 19.03(a)(7)(A) (West Supp. 2014) (defining capital murder as when "the person murders more than one person . . . during the same criminal transaction"). The offense is a first degree felony. *Id.* §§ 15.01(d), 19.03(b). The jury thereafter assessed his punishment at fifty years' confinement and a $5,000 fine.

In trial court cause number 1304127R (appellate cause number 02-13-00471-CR), the jury convicted Appellant of the murder of Eduardo Bustos. *Id.* § 19.02(b)(1)–(2) (West 2011). This offense too is a first degree felony. *Id.* § 19.02(c). The jury assessed his punishment for this offense at ninety-nine years' confinement and a $10,000 fine.

## Summary of Evidence

At one time Appellant, Michael Cucuta, and Eduardo Bustos sold drugs together. Bustos told Jesus Hernandez that he no longer wanted to sell drugs and wanted to change his life. Thereafter rumors started that Bustos was a

2

snitch; Bustos became concerned because being a snitch is dangerous. In addition to rumors about Bustos's being a snitch, which potentially placed Bustos at odds with Appellant and Cucuta, at least one of Bustos's friends, Hernandez, was aware that Bustos had had sex with Miriam Gonzalez—the mother of Appellant's children.

On October 9, 2011, Bustos and his girlfriend, Savana Rodriguez, were inside their apartment at Creek Hollow Apartments. Hernandez arrived at their apartment late at night, and Appellant arrived about thirty minutes later. Hernandez left about an hour-and-a-half to two hours later, after which Appellant used Rodriguez's phone, and not long thereafter, Cucuta arrived.

After Cucuta arrived, Appellant asked Bustos if he had "messed around" with Gonzalez. Bustos responded that he had. Appellant pulled a gun from behind his back and pointed it at Bustos's face. Appellant also questioned Bustos about being a snitch, but Bustos denied being a snitch. Rodriguez tried to move away, but Appellant grabbed her by the hair and put the gun to her head. When Bustos protested, Appellant aimed the gun back at Bustos while continuing to hold Rodriguez by her hair. Appellant then instructed Cucuta to hit Bustos with a liquor bottle; Cucuta, after initially grabbing a bottle and raising it above his head as if to strike Bustos, never struck Bustos but, instead, dropped the bottle. Appellant then instructed Cucuta to search the bedroom for cash and for an AK-47 assault rifle that Appellant thought Bustos had.

3

While Cucuta was in the bedroom, Bustos told Appellant, who was still holding Rodriguez by the hair, to leave her alone. Bustos then tackled Appellant. Rodriguez said, "They were fighting a little, and the gun started going off." Rodriguez tried to run, but Appellant jumped up quickly and shot her in the hip before she reached the door. Rodriguez said she fell to the floor and was fearful that Appellant would shoot her again; she heard noises that sounded like Appellant was trying to fire the gun again but the gun did not go off. Appellant and Cucuta then ran out of the apartment. Including the time Appellant fired at her, Rodriguez thought she heard about four or five gunshots overall.

Bustos died. The medical examiner described Bustos as a healthy young adult, except for three gunshot wounds. The medical examiner testified Bustos died from the gunshot wound to the chest.

### Admission of Photographs

In Appellant's first issue, he argues that the trial court erred by allowing highly prejudicial and gruesome autopsy photographs to be admitted into evidence over his objections. He complains that the photographs, State's Exhibits 44, 45, 46, 47, and 48, should have been excluded under rule 403 of the rules of evidence. Tex. R. Evid. 403.

State's Exhibit 44 shows the left side of Bustos's head, face, neck, and upper shoulder. The photograph shows blunt-force injuries to Bustos's forehead, frontal scalp at the hairline, and parietal scalp. The medical examiner testified that, based on the shape of the injuries, the blows came from an object with a

4

rectangular face and could have been inflicted with the butt of an automatic pistol or something with a similar configuration.

State's Exhibit 45 shows Bustos's left shoulder and upper arm to the elbow. The left side of Bustos's chest is visible as well as the fatal wound to the axilla. Also visible is the cut with the stitches caused by a thoracotomy that the surgeons performed when opening Bustos's chest to assess his internal injuries and below that, a chest-tube incision for a chest drain. The medical examiner said, however, that the major focus of this photograph was the gunshot wound to Bustos's upper arm. The medical examiner explained how the dark discolored area indicated a soot and gunpowder deposit, which meant a contact wound. There were two bruises—one a semicircular bruise from the edge of a gun muzzle and the other a rectangular abrasion that was most likely caused by the breech's guide coming back when the weapon was fired while in contact with Bustos's skin.

State's Exhibit 46 depicts the axilla and nearby surgical activity. The medical examiner explained that the circular wound with heavy soot and powder around it, as well as the abrasion and bruise above it from the edge of the gun muzzle, meant that it was a contact gunshot wound. The medical examiner said the bullet went through Bustos's diaphragm, continued through his stomach next to the pancreas, damaged a portion of the splenic artery, which he said was "a pretty good-sized artery – ble[]d quite a bit," and took out blood vessels to his left kidney, which the medical examiner summarized as "major."

5

State's Exhibit 47 shows Bustos's right arm with a clamp and intravenous line for fluid administration still present. The medical examiner said that the injury the jury was to focus on was the gunshot wound to Bustos's forearm. Based upon the circular defect with an abrasion at the margin and the tiny prick abrasions where gunpowder struck and damaged the skin, the medical examiner said the wound was an intermediate one fired from within a foot of Bustos's body.

State's Exhibit 48 shows the projectile and fragments after their removal from Bustos's body during the autopsy.

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *Sanchez v. State*, 418 S.W.3d 302, 310 (Tex. App.—Fort Worth 2013, pet. ref'd). Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *Sanchez*, 418 S.W.3d at 311. Factors courts may consider when determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice are the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *Id.*

6

Whether to admit photographs over an objection is within the trial court's sound discretion. *Id.* We reverse the trial court only if it acted outside the zone of reasonable disagreement. *Id.* Autopsy photographs are generally admissible unless they depict mutilation caused by the autopsy itself. *Id.* Photographs depicting the nature, location, and extent of a wound are probative enough to outweigh any prejudicial effect. *Id.* The court of criminal appeals has rejected the premise that visual evidence accompanying the oral testimony is either cumulative of oral testimony or of insignificant probative value. *Id.* at 312 (citing *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000)). "Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions." *Chamberlain*, 998 S.W.2d at 237.

The five photographs are in color and measure about eleven by sixteen inches. Although some of the photographs showed medical procedures performed by doctors to determine the extent of Bustos's injuries and to keep him alive, that does not make the probative value of the photographs substantially outweighed by the danger of unfair prejudice under rule 403, especially where, as here, the medical examiner was careful to differentiate between injuries suffered by the gunshot wounds and other cuts and incisions caused by the doctors while trying to save Bustos's life. *See Sanchez*, 418 S.W.3d at 311–12; *see also Green v. State*, 2009 WL 4575146, at *5 (Tex. App.—Houston [14th

7

Dist.] Dec. 8, 2009, pet. ref'd) (mem. op., not designated for publication). The photographs do not depict any mutilation caused by the autopsy, and they are no more gruesome than would be expected from the type of injuries Bustos suffered. *See Sanchez*, 418 S.W.3d at 312. "The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed." *Chamberlain*, 998 S.W.2d at 237. "And it is precisely because they depict the reality of this offense that they are powerful visual evidence, probative of various aspects of the State's case." *Id.* Therefore, we hold that the probative value of the autopsy photographs was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Therefore, we hold the trial court did not abuse its discretion by admitting State's Exhibits 44, 45, 46, 47, and 48 into evidence, and we overrule Appellant's first issue.

## Testimony about Appellant's Recorded Jail Calls

In Appellant's second issue, he asserts that the trial court erred by allowing a detective to testify as to the contents of recorded jail calls over Appellant's hearsay and Confrontation Clause objections. Appellant complains that the conversations were harmful because they contained at least tacit admissions of guilt.

Detective Danny Paine of the Fort Worth Police Department Homicide Unit testified about the contents of recorded jail calls between Appellant and two other individuals. Detective Paine testified that in one phone call between Eduardo

8

Gorostieta and Appellant, Gorostieta asked Appellant, "Is [Cucuta] going to say you did it or what?" Appellant responded, "Yeah, he's going to tell him that I did it." Appellant added that Cucuta was a "bitch-ass ho-ass nigga" and that he was going to knock Cucuta out the next time he saw him. Detective Paine stated in a later call between Gorostieta and Appellant, Gorostieta asked Appellant about Rodriguez, and Appellant responded that she was going to identify him and had already identified him. Later Gorostieta asked Appellant about someone named China or Chino (Hernandez was also known as Chino), and when Appellant realized who Gorostieta was talking about, Appellant called him a "snitching bitch-ass nigga." Detective Paine discussed a third call between Appellant and Gonzalez and the conversation turned to the fact that Gonzalez was pregnant by someone other than Appellant. Detective Paine said that when they discussed the name of the baby, Gonzalez responded, "Well, the father of my unborn child told me that Jarison is the name of the guy he killed, and he wants me to name the child that." Detective Paine said that Appellant responded, "No, you can't name him that," and then laughingly added, "Well, I guess you should name him Ed or Eduardo then."

A trial court's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial court abuses its discretion when it acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Galliford v. State*, 101 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Appellate

9

courts will affirm the trial court's ruling if it lies within the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Appellant's own statements, however, do not qualify as hearsay. Statements by a party are admissible as admissions by a party-opponent even if they are not against the party's interest when made. Tex. R. Evid. 801(e)(2)(A); *see Hughes v. State*, 4 S.W.3d 1, 6 (Tex. Crim. App. 1999); *Lewis v. State*, 815 S.W.2d 560, 568 (Tex. Crim. App. 1991) (holding statement admissible as nonhearsay when offered against party who made statement), *cert. denied*, 503 U.S. 920 (1992); *Lozano v. State*, 2007 WL 4216349, at *8 (Tex. App.—Fort Worth Nov. 29, 2007, no pet.) (mem. op., not designated for publication) (holding defendant's statements in text messages properly admitted as party admissions). As for Gorostieta's and Gonzalez's statements, they are not hearsay because they were not admitted for the truth of the matters asserted but to place Appellant's admissible responses into context for the jury. *See* Tex. R. Evid. 801(d)(2); *see also United States v. Henderson*, 626 F.3d 326, 337 (6th Cir. 2010) (holding statements made by others during defendant's recorded jail calls not admitted for truth but to put defendant's statements into context).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with

10

the witnesses against him." U.S. Const. Amend. VI. The prohibition against evidence being admitted against a defendant in violation of the Confrontation Clause applies to "testimonial evidence." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). Whether a statement is testimonial under the Confrontation Clause is a question of law reviewed de novo. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) ("Whether a statement is testimonial is a question of law."); *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) ("Although we defer to a trial court's determinations of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*."). Appellant's own nonhearsay statements are not within the class of evidence prohibited by the Confrontation Clause. *See Cantu v. State*, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.); *Davis v. State*, 268 S.W.3d 683, 708–09 (Tex. App.—Fort Worth 2008, pet. ref'd). Because Gorostieta's and Gonzalez's statements were not admitted for the truth of the matters asserted, they were not prohibited by the Confrontation Clause either. *See Crawford*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1369 n.9. Furthermore, as statements between Appellant, the mother of his children, and a friend, they were not testimonial and, therefore, not subject to the Confrontation Clause. *See Woods v. State*, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004), *cert. denied*, 544 U.S. 1050 (2005); *Hernandez v. State*, 2012 WL 3194310, at *6 (Tex. App.—Dallas Aug. 8, 2012, pet. ref'd) (not designated for publication).

11

We hold that the complained-of testimony was neither hearsay nor a violation of the Confrontation Clause and overrule Appellant's second issue.

**Denial of Requested Jury Instructions on Lesser-Included Offenses**

In Appellant's third issue, he asserts the trial court erred by refusing his requested jury instructions on the lesser-included offenses of (1) deadly conduct by knowing discharge of a firearm under section 22.05(b) of the penal code, (2) aggravated assault causing serious bodily injury under section 22.02(a)(1) of the penal code, (3) criminally negligent homicide under section 19.05 of the penal code, and (4) manslaughter by recklessly causing death under section 19.04 of the penal code. Tex. Penal Code Ann. §§ 19.04, 19.05, 22.02(a)(1), 22.05(b) (West 2011). Appellant also complains about the trial court's failure to submit his accidental-gun-discharge instruction. Appellant limits his third issue to the murder conviction.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State,* 163 S.W.3d 734, 741 (Tex.

12

Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. We review the evidence in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* Courts may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

The State does not dispute that Appellant meets the first element on all four lesser-included offenses. *See Barrios v. State*, 389 S.W.3d 382, 399 (Tex. App.—Texarkana 2012, pet. ref'd) (holding deadly conduct is a lesser-included offense of murder); *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000) (holding aggravated assault, criminally negligent homicide, and manslaughter are lesser-included offenses of murder). The dispositive question is whether the record contains some evidence from which a jury could have rationally acquitted Appellant of murder while convicting him only of one of the lesser-included offenses. *See Rousseau*, 855 S.W.2d at 672–73.

Appellant argues that when the same evidence is subject to multiple interpretations, the jury should be instructed on all those inferences. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). According to Appellant, Rodriguez testified that he pointed the gun at Bustos, Bustos charged and tackled him, and "[t]hey were fighting a little, and the gun started going off." Appellant emphasizes that Rodriguez did not say who pulled the trigger and

speculated in his argument that it might have gone off accidentally or even been fired by Bustos. Appellant concludes that these facts supported, at the very least, the manslaughter, criminally negligent homicide, and accidental-gun-discharge instructions. Appellant further argues that because of the reckless nature of his pointing the gun at others in a hostile fashion, the jury should have been instructed on the lesser-included offenses of deadly conduct and aggravated assault.

The State alleged that Appellant intentionally or knowingly caused the death of Bustos by shooting him with a firearm and, in a second paragraph, that Appellant intentionally, with the intent to cause serious bodily injury to Bustos, committed an act clearly dangerous to human life, namely, shooting Bustos with a firearm, which caused Bustos's death. The thrust of Appellant's argument is that because of the struggle with Bustos, it was possible Appellant acted with a culpable mental state less than that alleged in the indictment, which would have entitled him to one or all the lesser-included offenses. Tex. Penal Code Ann. § 6.02 (West 2011). In the case of the accidental-gun-discharge instruction, if the jury found the gun discharged accidentally during Appellant and Bustos's struggle, the jury was to find Appellant not guilty. *See id.* § 6.01 (West 2011). Alternatively, Appellant argues it was possible Bustos procured the gun during the struggle and shot himself three times, which would again have entitled Appellant to the lesser-included offenses of deadly conduct and aggravated

14

assault based upon Appellant's conduct before the struggle. The accidental-gun-discharge instruction was not drafted to encompass this latter scenario.

Appellant's arguments are based on limiting our review to specific pieces of evidence. But we are required to review the entire record. *Moore*, 969 S.W.2d at 8. Courts examine the entire record "instead of plucking certain evidence from the record and examining it in a vacuum." *Enriquez v. State*, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000).

There was evidence that Appellant initially pulled the gun on Bustos and Rodriguez. There was no evidence that either Bustos or Rodriguez threatened Appellant in any manner before he drew his gun on them.

Appellant pointed the gun at Bustos's face and at Rodriguez's head. Any shot to the face or head would, in all likelihood, be lethal.

There was no evidence Bustos ever wrestled the gun away from Appellant; just the opposite, there was evidence Appellant pummeled Bustos's head with an object consistent with the butt of a gun handle and which, under the circumstances, could have been nothing other than the butt of his pistol. This shows Appellant had the pistol while he and Bustos struggled. Rodriguez described Appellant as jumping up quickly and shooting her as she tried to flee; she did not describe Appellant as struggling to get free from Bustos. Similarly, she did not describe Appellant as trying to find the pistol or pry it away from Bustos.

15

Bustos was shot three times. Three shots belie reckless, negligent, or accidental conduct. But the number of shots was not limited to these three. Appellant shot Rodriguez as she tried to escape and tried to shoot her again while she lay helpless on the ground. Appellant makes no attempt to argue the attempts on Rodriguez's life were the result of recklessness, negligence, or accident.

There was evidence Appellant stopped shooting Bustos only when Rodriguez attempted to flee. Appellant successfully shot Rodriguez once and would have continued to shoot her but for a lack of ammunition or an unidentified gun malfunction. This conduct shows an attempt to leave no witnesses.

The evidence showed Appellant was concerned about Bustos's having sexual relations with Gonzalez, which Bustos confirmed, and about Bustos's being a snitch, which Bustos denied. Bustos's responses did not prompt Appellant to give Bustos a stern warning and then leave. Rather, Bustos's responses prompted Appellant to instruct Cucuta to strike Bustos with a liquor bottle and, thereafter, to search the bedroom for cash and an assault rifle. Under these facts, no rational juror could have rationally found that Appellant intended to let Bustos live. *See Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985) ("Just because part of the conduct may be 'involuntary' does not relieve a defendant of responsibility and culpability for the entire action."); *Turner v. State*, 413 S.W.3d 442, 456 (Tex. App.—Fort Worth 2012, no pet.) (holding in murder trial where defendant testified that he flinched and gun went off, he was not

entitled to charge on lesser-included offense of negligent homicide). Appellant tries to leverage Bustos's attempt to save his and Rodriguez's lives into some sort of ambiguity regarding his own culpable mental state or, for that matter, whether he had a culpable mental state at all. Tex. Penal Code Ann. §§ 6.01–.02. However, Bustos's attempt to attack Appellant while Cucuta was in the bedroom did not alter Appellant's intent or, in Bustos's case, the result. *See generally Westley v. State*, 754 S.W.2d 224, 230 (Tex. Crim. App. 1988) (holding defendant cannot commit a crime and then use his victim's response to claim self-defense), *cert. denied*, 492 U.S. 911 (1989).

In *Saunders*, the defendant was seen squeezing the back of an infant's head, and the infant later died. *Saunders v. State*, 840 S.W.2d 390, 390 (Tex. Crim. App. 1992). The court held that because squeezing the back of an infant's head was ambiguous for purposes of establishing the defendant's intent, the defendant was entitled to a charge on the lesser-included offense of criminal negligence. *Id.* at 392. There is no comparable ambiguity about pointing a gun at Bustos's face and Rodriguez's head, about shooting Bustos three times when he tried to save himself and Rodriguez, or about shooting Rodriguez once as she was trying to get away and attempting to shoot her again while she lay helplessly on the floor. *See Cavazos*, 382 S.W.3d at 385 ("Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots.");

17

*Salinas*, 163 S.W.3d at 742 ("Dragging Morales from the car and shooting him in the head with a shotgun at close range were not merely acts clearly dangerous to human life that resulted in death. . . . [T]he evidence shows . . . the intent to kill. . . . Appellant was not entitled to a charge on the lesser-included offense . . . ."). Appellant did not testify. There is no affirmative testimony that Bustos shot himself or that Appellant recklessly, negligently, or accidentally shot Bustos three times while wrestling with him; consequently, Appellant has to rely on any ambiguity in the evidence, but there is no ambiguity. There is only speculation inconsistent with the evidence. *See Cavazos*, 382 S.W.3d at 385 (meeting second prong of test for lesser-included offense instruction "requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense"). We hold that there is no evidence from which a jury could have rationally acquitted Appellant of murder while convicting him only of one of the lesser-included offenses. *See Rousseau*, 855 S.W.2d at 672–73.

Even if, despite all of the other evidence that Appellant voluntarily shot Bustos with the intent to kill him, this sole piece of Rodriguez's testimony could be construed as raising the possibility that the gun accidentally discharged three times, or that Bustos was responsible for its discharging during the struggle, Appellant would nevertheless not be entitled to the deadly conduct, aggravated assault, criminally negligent homicide, and manslaughter instructions he sought. Deadly conduct and aggravated assault would require a knowing or reckless, not

18

an accidental or involuntary, discharge of the gun by Appellant. Tex. Penal Code Ann. § 22.01(a)(1) (defining assault as intentionally, knowingly, or recklessly causing bodily injury), § 22.02(a)(1) ("A person commits an offense if the person commits assault . . . ."), § 22.05(b) ("A person commits an offense if he knowingly discharges a firearm . . . ."). And accidental discharge alone does not raise the issue of criminally negligent homicide; there must be some other evidence showing that the actor was unaware of the risk created by his conduct. *Thomas*, 699 S.W.2d at 850; *Turner*, 413 S.W.3d at 456. After reviewing the entire record, we find no such evidence here. Finally, because manslaughter is a result-of-conduct offense, meaning that the reckless conduct itself must have caused the death, the fact that Appellant may have created the circumstances leading to Bustos's death by taking the gun to his house, pointing it at Bustos, threatening him and Rodriguez with it, and holding onto it while struggling with Bustos after being rushed by him fails to raise the issue. *See Gilbert v. State*, 196 S.W.3d 163, 165–66 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

At trial, Appellant relied on *Garcia v. State*, 605 S.W.2d 565, 566 (Tex. Crim. App. [Panel Op.] 1980), to support his request for an accidental-gun-discharge instruction. *Garcia* was a panel decision in which the three judges initially held the trial court reversibly erred by not submitting a special instruction on accident. *Id.* However, in an opinion on the denial of the State's motion for leave to file a motion for rehearing, one judge who was not a member of the original panel dissented. *Id.* (Douglas, J., dissenting). The dissent argued that

19

although accident was a statutorily-recognized defense under article 39 of the 1925 penal code, it was no longer a statutorily-recognized defense under the then-current penal code; therefore, the trial court did not err by denying the requested instruction on accident. *Id.* at 567. *Garcia* has never been expressly overruled, but in 1982, without ever citing *Garcia,* the Texas Court of Criminal Appeals, acting en banc and unanimously, adopted the dissent's position. *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (op. on reh'g). In 2003, in *Rogers v. State*, a unanimous en banc court of criminal appeals again held that under the current penal code, there is no defense of accident. 105 S.W.3d 630, 637 (Tex. Crim. App. 2003). The court noted, citing former article 39, that the defense of accident existed under the previous penal code before the enactment of the present Texas Penal Code in 1973. *Id.* at 636 n.11.

Appellant argues that the touchstone of the accidental gun discharge instruction is voluntariness, which is in the current penal code and which, he asserts, makes his requested instruction proper. Appellant stresses that his proposed instruction addressed voluntary conduct. That is true, but it also tied an accidental discharge of the gun back into the voluntariness of that conduct.[2]

---

[2]Appellant's proposed instruction provided:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.

The court of criminal appeals rejected this position in *Rogers*: "[F]or purposes [of the Texas Penal Code], an 'accident' is not the same as, and should not be treated as the equivalent of, the absence of any voluntary act. . . . We again reject this view and hold that the word 'voluntary' does not refer to the same defensive theory as the word 'accident' . . . ." *Id.* at 639. Relying on *Rogers* and *Williams*, we hold the trial court did not err by denying Appellant's accidental gun discharge instruction.

We hold the trial court did not err in denying Appellant's instructions and overrule Appellant's third issue.

---

> Thus, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, JOSE ACOSTA, did cause the death of EDUARDO BUSTOS by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the shooting was a result of an accidental discharge of the gun while EDUARDO BUSTOS and the defendant were struggling or scuffling for the possession of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "Not Guilty."

This instruction is comparable to the one successfully used in *Garcia*:

> You are instructed that no act done by accident is an offense against the law. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant . . . killed the deceased, . . . but you further believe from the evidence or have a reasonable doubt that the shooting was by the accidental discharge of a pistol in the hands of the defendant, or was the result of an accident while the deceased and the defendant were struggling or scuffling for possession of a pistol, then the defendant would not be guilty and should be acquitted. . . .

605 S.W.2d at 567.

## Conclusion

Having overruled Appellant's three issues, we affirm the trial court's judgments.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 8, 2015