

# NUMBER 13-12-00266-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DEON GREGORY GARY,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

---

### On appeal from the 329th District Court
### of Wharton County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Justice Rodriguez**

Appellant Deon Gregory Gary challenges his conviction for first-degree felony possession of a controlled substance with intent to deliver. *See* TEXAS HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). By one issue, Gary argues that the trial court erred in failing to suppress certain physical evidence and Gary's statement to police because his arrest and the resulting search were illegal. We affirm.

## I. Background

On the evening of May 12, 2011, Gary was arrested outside The Pub, a bar in El Campo, Texas, after police discovered him in possession of powder and crack cocaine. Gary was indicted for possession with intent to deliver. Gary pleaded not guilty, and his case was tried to a jury.

Before trial, Gary filed a motion to suppress, seeking to suppress the drug evidence recovered at the time of his arrest and the statement he gave to police shortly after his arrest. Gary and the State agreed to carry the motion to suppress to trial rather than have a pre-trial hearing. Trial began with the testimony of the El Campo Police Department officers involved in Gary's arrest. Gary's statement to police, which contained his confession, was admitted without objection. Before the challenged physical drug evidence was presented to the jury, the trial court halted the proceedings, excused the jury from the courtroom, and heard the testimony of one of the officers regarding the events leading to Gary's arrest, the search of Gary's person and vehicle, and the resulting recovery of the drug evidence.

Officer Clint Savino testified that he was provided information by a confidential informant that Gary was selling narcotics at The Pub on Thursday nights. Officer Savino testified that he had received accurate information from this particular informant on prior occasions and considered the informant to be a reliable source. The informant told Officer Savino that

> Mr. Gary would not carry the narcotics on his person, that he would keep them in his car. And that while he was inside The Pub, if somebody wanted something, . . . Mr. Gary would exit The Pub, go out to his car and get the — get whatever had been ordered and take it back in, make the transaction. The [informant] said the reason he did this was that in case the police got called for a disturbance or any other type of thing, he would

2

only have the crack cocaine in his pocket for a small amount of time.

Officer Savino relied on the foregoing details when he went to The Pub that Thursday evening to conduct surveillance and testified that he observed the exact conduct described by the informant. Gary twice exited The Pub and retrieved something from his car before re-entering the bar.[1] Immediately after Gary got out of his car on the second trip, Officer Savino and his partner approached Gary with their guns drawn, ordered Gary to the ground, and handcuffed him. Officer Savino then stood Gary up and patted him down. In the course of the pat-down, Officer Savino discovered two small baggies of powder cocaine in the coin pocket of Gary's blue jeans. Officer Savino testified that after he retrieved the powder cocaine from Gary's pocket, he believed there might be further evidence in Gary's vehicle.[2] Officer Savino seated the handcuffed Gary into the patrol car that had arrived at the scene, and then he and his partner searched Gary's vehicle. In their search, they found a pill bottle containing crack cocaine in the pocket of the driver-side front door.

After Officer Savino's testimony and argument by defense counsel and the State, the trial court denied Gary's motion to suppress and admitted the drug evidence.[3] The jury subsequently returned a guilty verdict, and the trial court sentenced Gary to twenty-five years in prison. This appeal followed.

---

[1] In addition to his suspicion that Gary was retrieving drugs from his car, Officer Savino testified that Gary was also playing loud music from his car and was in violation of the City's noise ordinance, which Officer Savino testified was another factor that justified his detention of Gary.

[2] In addition to his belief that the car might contain further evidence, Officer Savino testified that his partner had observed a bag of K-2, a marihuana-like substance banned at the time by the City of El Campo and later criminalized by the Texas Legislature, on the front passenger seat.

[3] At the end of the mini-hearing during trial, Gary only requested suppression of the drug evidence. He did not request suppression of, or otherwise even reference, his statement to police.

## II.  Discussion

Gary asserts that from the moment the police officers pulled their guns outside the bar, Gary was under arrest, not merely detained.   By his one issue, Gary then argues that his arrest and the subsequent search of his person and vehicle were illegal because the police lacked probable cause.   Because his arrest and the resulting searches were illegal, Gary argues that the trial court erred in admitting physical evidence obtained by police in their searches.   Gary further argues that the statement he gave police shortly after his arrest was inadmissible as fruit from the poisonous tree of the illegal arrest.

### A.  Standard of Review

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review.   *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.—Corpus Christi 2009, no pet.).   The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.   *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).   We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility.   *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011).

When, as was the case here, the trial court made no findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings that supported its ruling.   *Tucker v. State*, 369 S.W.3d 179, 184 (Tex. Crim. App. 2012) (citations omitted).   We must uphold the trial court's ruling if it is

4

reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

**B.  Probable Cause, Warrantless Arrests, and Scope of Search**

Warrantless arrests are authorized only if (1) there is probable cause, and (2) the arrest falls within one of the limited circumstances provided by statute. *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Crim. App. 1997) (citing *Henry v. United States*, 361 U.S. 98 (1959); *Self v. State*, 709 S.W.2d 662 (Tex. Crim. App. 1986)). Probable cause exists when the police have relatively trustworthy information that, considered as a whole, is sufficient to cause a reasonable person to believe a particular person has committed or is committing an offense. *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). "Probable cause is a 'fluid concept' that cannot be 'readily, or even usefully, reduced to a neat set of legal rules.'" *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) (quoting *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003)). "Though the concept evades precise definition, it involves 'a reasonable ground for belief of guilt' that is 'particularized with respect to the person to be searched or seized.'" *Id.* (quoting *Pringle*, 540 U.S. at 370–71). With regard to statutory authorization, article 14.03 of the Texas Code of Criminal Procedure authorizes a peace officer to "arrest, without warrant[,] . . . persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony . . . or are about to commit some offense." TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West Supp. 2011).

The lawful scope of a search incident to a legal warrantless arrest includes the person of the arrestee. *Thornton v. United States*, 541 U.S. 615, 620 (2004). Moreover, "circumstances unique to the vehicle context justify" a search of the vehicle

5

when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (citing *Thornton*, 541 U.S. at 632 (Scalia, J., concurring)); *see also Tyler v. State*, No. 02-10-00194-CR, 2011 WL 3426219, at *3 (Tex. App.—Fort Worth Aug. 4, 2011, no pet.) (mem. op., not designated for publication) (citing *Gant*, 556 U.S. at 343; *Thornton*, 541 U.S. at 630 (Scalia, J., concurring)) (explaining that "[o]nce an officer has probable cause to arrest, he may search a vehicle incident to a recent occupant's arrest in two circumstances," one of which being "when it is reasonable to believe that the vehicle contains evidence of the offense of arrest").

## C. Analysis

The facts relevant to this issue are largely undisputed. Officer Savino was given detailed information from a confidential informant about the methods Gary used to sell drugs to patrons at The Pub on Thursday nights. During his surveillance on the night of the arrest, Officer Savino observed the exact behavior described by the informant—Gary periodically exiting The Pub, retrieving something from his car, and returning to The Pub. Immediately after Gary got out of his car on his second trip outside The Pub, Officer Savino and his partner approached Gary with their guns drawn, ordered him to the ground, handcuffed him, searched him, seated him the back of a patrol car that had arrived at the scene, and then searched Gary's vehicle. In their search of Gary's person, the officers discovered two small baggies of powder cocaine. In their search of Gary's vehicle, the officers discovered a pill bottle containing crack cocaine in the driver-side front door.

On appeal, Gary and the State appear to disagree as to the degree of custody

6

Gary was under at various points during his encounter with the police outside The Pub. Even assuming that Gary was under arrest from the inception of his encounter with the police outside The Pub, we still conclude that that warrantless arrest was legally initiated and that the scope of the subsequent search did not exceed legal limits.

First, the facts show that Gary's warrantless arrest was lawful. Officer Savino identified specific information, particularized to Gary, that was provided to him by a trustworthy source. That information—which included the exact method Gary used to sell drugs at The Pub on Thursday nights—was corroborated by Officer Savino's personal observations during his surveillance.[4] In other words, based on the information provided by his reliable confidential informant and the behavior he personally observed at the scene, it was reasonable for Officer Savino to believe Gary had committed or was committing an offense. *See Baldwin*, 278 S.W.3d at 371; *Hughes*, 24 S.W.3d at 838. Officer Savino therefore had probable cause to arrest Gary for possession of drugs.

Moreover, article 14.03 provided the necessary statutory ground for Gary's arrest. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1). Here, the facts and circumstances known by Officer Savino at the time of Gary's arrest, which we have already determined were sufficient to establish probable cause, were also sufficient to establish that Gary's car in The Pub's parking lot was a "suspicious place" under article 14.03(a)(1). *See id.*

_____

[4] In his brief, Gary cites *Gilmore v. State* for the proposition that "the corroboration of mere innocent details is insufficient to establish that the tip is reliable." *See* 323 S.W.3d 250, 258 (Tex. App.—Texarkana 2010, pet. ref'd). Gary argues that "[w]hat the officers observed was as consistent with innocence as [with] criminal activity" and therefore required further corroboration, such as "the informant making a statement against [his] interest [or] the tip being consistent with information provided by other informants." Gary's reliance on the corroboration principles in *Gilmore* is misplaced. The further corroboration identified in *Gilmore* is necessary when the police act on information provided by an anonymous tipster. *See id.* Here, Officer Savino testified that he knew the informant who gave him the information about Gary and had been provided accurate information by the informant in the past. In short, this case did not involve an anonymous tip with no indicia of reliability.

In particular, the car and parking lot were a "suspicious place" for Gary to repeatedly come and go from over the short period of time Officer Savino was observing the scene—a regular patron of The Pub would likely have no reason to be going to and from his or her car multiple times throughout an evening. With these facts in mind, Officer Savino could have reasonably inferred that Gary was "guilty of some felony" or was "about to commit some offense against the laws." *See id.*

Next, we conclude that the searches of Gary's person and car were lawful searches incident to Gary's arrest. The search of Gary's person was clearly a permissible search of an arrestee. *See Thornton*, 541 U.S. at 620. With regard to the vehicle search, Officer Savino testified that, after he discovered the powder cocaine in Gary's pocket, he believed the vehicle might contain further evidence. Under the circumstances, this belief was reasonable. *See Gant*, 556 U.S. at 343. Gary had exited the car immediately before he was arrested by the officers for possession and drugs were then found in his pocket. It was entirely reasonable for the officers to believe that the car might contain further evidence relevant to the crime for which Gary was arrested, a circumstance unique to the vehicle context which justified the search of Gary's car.[5] *See id.*; *see also Thornton*, 541 U.S. at 620.

Finally, we conclude that Gary did not preserve his complaint regarding the admission of his statement to police. If a motion to suppress has not been ruled on by

---

[5] Gary points to several statements by Officer Savino during his testimony that he may not have believed he had probable cause to arrest Gary. First, we note that Officer Savino eventually testified, during re-direct by the prosecutor, that he did believe he had probable cause. And regardless, a police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment, and subjective intentions play no role in an ordinary, probable-cause Fourth Amendment analysis. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). As discussed above, the undisputed facts objectively justified Officer Savino's warrantless arrest of Gary, so we are not persuaded by Gary's various arguments related to the officers' subjective beliefs.

the time the evidence is offered at trial, to preserve error, a defendant must object to the evidence at the time it is offered. *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984). A motion to suppress evidence is untimely if it is made after the evidence, or substantial testimony about the evidence sought to be suppressed, has already been admitted without objection.[6] *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. 1980); *Stults v. State*, 23 S.W.3d 198, 205–06 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd). Here, unlike the physical drug evidence, Gary's statement was introduced by the State and admitted by the trial court, without objection, well before the court took up the suppression motion. And even assuming Gary was permitted to wait until after the mini-hearing on the suppression motion, he did not urge the trial court to suppress his statement at that point, either. He asked only that the trial court suppress the physical drug evidence. For these reasons, Gary failed to preserve this issue in so far as it concerns his statement to police.

In sum, we cannot conclude the trial court erred in denying Gary's motion to suppress. The facts surrounding Gary's arrest provided objectively justifiable probable cause for the officers to arrest Gary for possession, and the search of Gary's person and

---

[6] We note that one narrow exception to the foregoing rule is when the trial court has made specific pretrial comments that "essentially [direct the defendant] to wait until all the evidence is presented" before seeking a ruling from the court on the motion to suppress and has told the defendant that it would "make no ruling until all the testimony had been presented." *Garza v. State*, 126 S.W.3d 79, 84–85 (Tex. Crim. App. 2004). We do not believe this exception applies to this case because the trial court took up the motion to suppress and held a mini-hearing on the motion before it allowed the State to admit the challenged evidence. To the extent that exception applies here because the trial court allowed the parties to carry the motion to suppress until the evidence was admitted at trial, we would still conclude that Gary failed to preserve his complaint as to his statement because he never urged the trial court to suppress his statement to police.

vehicle was a lawful search incident to Gary's lawful warrantless arrest.[7]  We overrule

Gary's sole appellate issue.

### III.  Conclusion

We affirm the judgment of the trial court.


NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 7th
day of February, 2013.

---

[7] Having so determined, we need not address Gary's argument regarding the "plain feel" doctrine and any justification the alleged noise ordinance violation provided for Gary's arrest.  *See* TEX. R. APP. P. 47.1.

10